UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| GREGORY FRANKS | CIVIL ACTION NO. 14-cv-2748 |
| VERSUS | JUDGE WALTER |
| N. BURL CAIN | MAGISTRATE JUDGE HORNSBY |

## REPORT AND RECOMMENDATION

**Introduction**

Shreveport police began investigating Gregory Franks, who was suspected of being a major cocaine distributor. A confidential informant called Petitioner and ordered a kilogram of cocaine. Police officers watched Petitioner as he drove from his home in Logansport to the Shreveport area. The officers initiated a traffic stop, and Petitioner tried to flee but crashed his car into a fence. He admitted post-<u>Miranda</u> that he had a kilogram of cocaine in his truck, and police discovered a brown paper bag on the passenger seat of the truck that contained a kilogram of cocaine.

The Caddo Parish District Attorney charged Petitioner with possession of 400 grams or more of Schedule II CDS, cocaine. Petitioner was convicted, adjudicated a third-felony offender, and given a mandatory life sentence. Petitioner pursued a direct appeal and post-conviction application in state court. He now seeks federal habeas corpus relief. For the reasons that follow, it is recommended that his petition be denied.

**Timeliness Defense**

The State argues that the federal petition is untimely, but the argument is based on a mistaken calculation. The State is correct that limitations period began to run on (Thursday) February 16, 2012, which was 90 days after the Supreme Court of Louisiana denied writs on direct appeal. Tr. 753.[1] That period ran until it was tolled by the filing of a post-conviction application. The post-conviction filing benefitted from the prisoner mailbox rule, so its tolling effect began on the day Petitioner tendered it to prison officials for mailing.

The record does not disclose the date Petitioner tendered his application for mailing, but it does show that Petitioner signed the application and dated it January 23, 2013 in multiple places. The application was stamped filed by the Caddo Parish Clerk of Court on February 15, 2013. The State has given Petitioner the benefit of the doubt and assumed he tendered the application for filing on January 23, 2013, the date it was signed. There is no evidence to the contrary. The State calculates the time between the commencement of the limitations period on February 16, 2012 and tolling on January 23, 2013 as 352 days, but it is actually 342 days.

The tolling effect stopped when the Supreme Court of Louisiana denied writs at the end of the post-conviction process on August 25, 2014. Petitioner signed and filed his federal petition (by email from Angola) 21 days later on September 15, 2014. Thus, based on the available evidence, there was only 363 days of untolled time between the finality of

---

[1] The rules for calculating the limitations period and the tolling effect of filings can be found in cases such as <u>Guilleard v. Cain</u>, 2016 WL 803861 (W.D. La. 2016).

the conviction and the filing of the federal petition, which does not establish a defense of untimeliness.

**Recusal Issue**

    **A. Introduction**

Petitioner argues that he was denied the right to a trial before an impartial judge because Judge Michael Walker recused himself but, some months later, the case was reassigned to Judge Walker and proceeded to trial. The record shows, however, that the recusal was due solely to issues between Judge Walker and Petitioner's retained counsel, Mr. John Cucci. Petitioner later fired Mr. Cucci, after which the case was reassigned to Judge Walker.

    **B. State Court Proceedings**

The case was originally assigned to Section 5, known as the drug court, over which Judge Walker presided. Petitioner was originally represented by the indigent defender, but he later hired attorney Rick Fayard. About four months later, Petitioner replaced Fayard with attorney Cucci. Tr. 1-2. When it was brought to Judge Walker's attention that Cucci had enrolled, Walker stated: "This case has been - - because of Mr. Cucci's – Mr. Cucci's cases have been recused by me so he - - per his request." Tr. 674. The case was then randomly reassigned to Section 3.

Several months later, Petitioner and Mr. Cucci appeared in Section 3 before Judge Scott Crichton. Mr. Cucci announced that Petitioner had fired him, and Petitioner said he intended to hire a new attorney within 30 days. The court then summoned Mr. Cucci to the

bench, where they had an off-the-record discussion.  The court then announced: "Because Mr. Franks has terminated the services of Mr. Cucci, this matter can be returned to Section 5.  As I understand it, the judge in Section 5 recused himself because of Mr. Cucci." Attorney Cucci replied, "That's correct."  The court stated that the issue that caused the recusal was gone, so there was no reason the matter could not be returned to Section 5, and that was ordered.  Tr. 678-80.

The case was reassigned to Judge Walker.  Petitioner hired attorney Carlos Prudhomme, who represented Petitioner at trial and the multiple offender hearing and sentencing.  Neither Petitioner nor Prudhomme made any objection to Judge Walker presiding over the proceedings.

A different attorney was appointed to represent Petitioner on direct appeal.  They argued for reversal of the conviction on the grounds that, under Louisiana law, any action taken by a judge after recusal is an absolute nullity.  Tr. 526-27.  Petitioner filed a pro se brief that also complained the trial was held before a judge who had recused himself; Petitioner also invoked his federal constitutional rights to due process and an unbiased judge.  Tr. 492-94.  The appellate court, which did not have the benefit of some of the transcripts cited above, stated that the record before it did not reflect the reason for recusal or otherwise provide enough information to decide the issue, so the matter was remanded for a hearing.  State v. Franks, 975 So.2d 836 (La. App. 2d Cir. 2008).

Judge Craig Marcotte held a hearing at which Assistant District Attorney Jason Brown testified.  Brown said he was one of the prosecutors on the case who handled it through

completion. He was asked if it was his understanding that Judge Walker's recusal was based on the acrimonious relationship between Walker and Cucci. Brown said it was "solely based upon their relationship," with which he was very familiar. He said that Judge Walker had "recused himself from all of John Cucci's cases." Brown also testified that Walker did not make any improper comments or adverse rulings during the course of the trial that would have prejudiced the defense. Tr. 599-606. The trial court also gathered the transcripts of Walker's recusal and the hearing before Judge Crichton that led to the reassignment.

Judge Marcotte found that the sole reason for recusal was the relationship between Judge Walker and Mr. Cucci, and it "had nothing to do with the facts of this case nor the defendant." For these reasons, he found that there were no grounds for relief. Tr. 656-58. The appellate court affirmed with the observation that there was "absolutely no evidence that Judge Walker had any bias against Franks personally." The court also found that the failure to object waived the right to demand Walker's recusal or demand nullification of the proceedings. State v. Franks, 55 So.3d 34 (La. App. 2d Cir. 2010), writ denied, 75 So.3d 451 (La. 2011).

**C. Habeas Analysis**

The Constitution guarantees the right to a trial before an impartial judge. Tumey v. State of Ohio, 47 S.Ct. 437 (1927). A violation of the right requires setting aside a

conviction even if no particular prejudice is shown and even if the defendant was clearly guilty. Chapman v. California, 87 S.Ct. 824, 837 (1967).

The state courts decided this claim on the merits, so federal habeas corpus relief is available only if the adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d).

The state court ensured that a complete factual record of the recusal issue was assembled, including the testimony of a witness and the preparation of transcripts of the relevant hearings and events. The court reasonably assessed those facts to determine that the sole grounds for recusal was the relationship with attorney Cucci, which went away when Petitioner fired Cucci. The court then quite reasonably determined that there was no evidence of bias by Judge Walker against Petitioner. There is no basis under the habeas review standard for overturning that decision, and Petitioner has not cited any clearly established Supreme Court precedent that would preclude the reassignment of the case to Walker after the grounds for recusal went away. There is, therefore, no basis for a habeas court to vacate the conviction based on this claim.

**Evaluation for Alzheimer's Disease**

    **A. State Court Proceedings**

Rick Fayard, the original retained attorney, filed a motion to appoint a "sanity commission" to exam Petitioner and report on his competency to assist in his defense. Fayard stated that there was reason to believe Petitioner lacked capacity because of Alzheimer's disease. He said that he based his belief on a visit with Petitioner at the jail, at which Petitioner stated that he was unable to recall many important aspects of the alleged offense and related events. Petitioner also told Fayard that his family had a history of Alzheimer's disease, and he believed he was affected by it. Tr. 33-34. Judge Walker appointed Dr. George Seiden and Dr. Richard Williams to evaluate Petitioner for competency. Tr. 35.

Dr. Williams, a psychiatrist, interviewed Petitioner, who stated that he had an extended family history of Alzheimer's disease in his mother, two sisters, three aunts, and grandfather. Petitioner, who was then 46, was given several standard tests and determined to have the ability to consult with his attorney with a reasonable degree of rational understanding. Petitioner was able to describe the court proceedings and the role of the persons involved. He exhibited some recent memory impairment, but Dr. Williams opined that he was malingering. Tr. 37-41.

Dr. Seiden, also a psychiatrist, conducted a similar examination. He noted that Petitioner repeatedly made comments that he had significant memory problems, but his performance during the interview was not consistent with the nature of his complaints. Petitioner reported his family history of Alzheimer's disease, but formal testing did not indicate any significant problems with memory or concentration. Dr. Seiden concluded that

Petitioner was competent to assist with his defense and, at the time of the alleged crime, was not suffering from any mental disease or defect that interfered with his ability to distinguish right from wrong. Tr. 43-49.

The court determined that Petitioner was competent. He complained on appeal that the trial court erred in failing to order the psychiatrists to evaluate him more specifically for Alzheimer's disease. Petitioner continues to complain in his habeas petition that the trial judge should have ordered proper tests or evaluations geared specifically towards the effect of that disease.

**B. Habeas Analysis**

The conviction of a legally incompetent person violates constitutional due process. A state court must conduct an inquiry into a defendant's mental capacity sua sponte if the evidence raises a bona fide doubt as to his competency. Mata v. Johnson, 210 F.3d 324, 329 (5th Cir. 2000), citing Pate v. Robinson, 86 S.Ct. 836 (1966). In determining whether there is a bona fide doubt as to competence, the court looks to factors such as any history of irrational behavior, demeanor at trial, and any prior medical opinion on competency. Mata, 210 F.3d 329. The extent and severity of the defendant's history of mental health problems which have been brought to the court's attention influence the breadth and depth of the competency inquiry that is required. Mata, 210 F.3d at 330, citing Drope v. Missouri, 95 S.Ct. 896 (1975).

The state appellate court reviewed the medical reports and opinions. It noted that both psychiatrists wrote that Petitioner had a family history of Alzheimer's disease, but the results

of the examinations did not indicate that Petitioner suffered from that particular disease. The trial court's finding of competence was upheld. State v. Franks, 975 So.2d at 839-40.

This claim was adjudicated on the merits in the state court, so relief is not available unless that decision was contrary to or an unreasonable application of clearly established holdings of the Supreme Court, or was based on an unreasonable determination of the facts in light of the evidence presented in state court. Section 2254(d). The statute bars habeas relief unless the prisoner shows that the state court "erred so transparently that no fairminded jurist could agree with that court's decision." Bobby v. Dixon, 132 S. Ct. 26, 27 (2011) (per curiam).

Petitioner generally argues that the trial court should have sua sponte ordered specialized testing to determine the affect of Alzheimer's disease. Two respected psychiatrists evaluated Petitioner and, with knowledge of his family history, nonetheless found no indication that he suffered from the disease at the relatively young age of 46. There was no bona fide indication in the record that Petitioner suffered from the effects of Alzheimer's disease. Petitioner points to no record evidence of irrational behavior or improper demeanor at trial, and all medical opinion of record is to the contrary. The state court's decision with respect to this issue was reasonable and does not provide grounds to overturn the conviction on habeas review.

**Confrontation Clause Claim**

    **A. The Testimony**

Petitioner complains that the State violated his rights under the Confrontation Clause when the lead investigator, Cpl. Russell Sarpy, testified about statements made by an informant who was not subject to cross-examination. Sarpy testified that his investigation began with contact with an individual who agreed to cooperate with the police. The prosecutor asked Sarpy what his investigation of Petitioner entailed. Sarpy said that it indicated that Petitioner "was a major cocaine distributor that was living in Logansport, Louisiana and he was distributing the majority of his cocaine in Shreveport." Tr. 319. Sarpy then described how he had an informant make a call to Petitioner and order a kilogram of cocaine for delivery on October 11, 2003 at a particular location in Shreveport. Tr. 320. Defense counsel established on cross-examination that Petitioner was not developed as a suspect until the informant was arrested on his own drug charges and provided police information about Petitioner. Tr. 332-34.

The prosecutor, on redirect, attempted to respond to questions that had been asked by defense counsel about why police believed the transaction would happen at a particular Shreveport drugstore, even though it had not been mentioned in the phone call. He asked Cpl. Sarpy why he believed Petitioner was going to that store when he left his home. Sarpy responded: "Because the CI had provided information to us that, that was the normal location to conduct business." Sarpy added that it was "something that was not just talked about over the telephone because they had an understanding" and did not need to say the quantity, price, or location. Those matters were understood from prior dealings. Tr. 348-49.

**B. Habeas Analysis**

The Confrontation Clause generally prohibits the admission of testimonial statements offered to establish the truth of the matter asserted if the statements were made by persons who are not subject to cross-examination at trial. But both Louisiana and federal law allow a law enforcement officer to testify generally about information provided by another person without it constituting hearsay if it is offered, not for the truth of the information, but to explain the course of the police investigation and the steps leading to arrest. State v. Addison, 920 So.2d 884, 892 (La. App. 5th Cir. 2005); Woodfox v. Cain, 609 F.3d 774, 814 (5th Cir. 2010); U.S. v. Brown, 560 F.3d 754, 764 (8th Cir. 2009); and U.S. v. Moten, 617 Fed. Appx. 186, 192 (3d Cir. 2015).

Petitioner raised this claim on direct appeal. The appellate court found it lacked merit because the officer's testimony about his dealings with the informant was offered to explain the conduct of the police in placing Petitioner under surveillance and in stopping him on his way to the place where police believed the drug sale would occur. State v. Franks, 975 So.2d So.2d at 840-41. The claim was adjudicated on the merits, so habeas relief is not permitted unless the state court erred so transparently that no fair-minded jurist could agree.

The appellate court's characterization of the testimony is perhaps debatable on some points but is generally accurate. Sarpy referred to information he received from the informant to explain why he was investigating Petitioner and why the traffic stop was conducted when it was. There were no particular statements made by the informant that were offered for their truth. Instead, reference was made to them to provide context to the investigation and explain the agent's actions.

The state court's decision is not subject to being overturned under the demanding habeas standard. Furthermore, Confrontation Clause violations are subject to a harmless error analysis that allows habeas relief on account of constitutional error in a state court criminal trial only if the error had a substantial and injurious effect or influence in determining the jury's verdict. Fratta v. Quarterman, 536 F.3d 485, 507-08 (5th Cir. 2008). Any error in this case was harmless. Petitioner was convicted of possession of a certain quantity of cocaine, and the evidence showed undeniably that he had the cocaine on the seat of his truck when he was stopped, and he admitted to police that he had a kilogram of cocaine in his truck.

**Appellate Counsel**

Petitioner argues that appellate counsel was ineffective for not raising the lawfulness of the traffic stop and seizure of cocaine from his truck. Effective assistance of appellate counsel does not require counsel to raise every non-frivolous ground of appeal available. It requires only that counsel perform in a reasonably effective manner. Green v. Johnson, 160 F.3d 1029, 1043 (5th Cir. 1998), citing Evitts v. Lucey, 105 S.Ct. 830 (1985). When a petitioner complains that counsel omitted an issue, the petitioner must show that had the issue been raised there was a reasonable probability that he would have won on appeal. Smith v. Robbins, 120 S.Ct. 746, 764 (2000); Moreno v. Dretke, 450 F.3d 158, 168 (5th Cir. 2006).

Petitioner complains that appellate counsel should have raised search and seizure issues. "Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth

Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." Kimmelman v. Morrison, 106 S.Ct. 2574, 2583 (1986); Shed v. Thompson, 2007 WL 2711022, *5 (W.D. La. 2007).

Attorney Cucci filed a pretrial motion to suppress. A hearing was held, and Judge Jeanette Garrett denied the motion. She gave extensive reasons, including Cpl. Sarpy's virtual certainty that Petitioner was delivering cocaine at the time of his traffic stop. She found the stop was based on reasonable, trustworthy information to establish probable cause, and the search of the truck was valid under the automobile exception. Tr. 291-304.

Petitioner argued in his post-conviction application that appellate counsel should have challenged that ruling. The trial court noted the burden an applicant faces when claiming ineffective assistance of appellate counsel and found that Petitioner did not meet it. Tr. 832-33. The appellate court denied a writ application with a summary statement: "On the showing made, the writ is denied." Tr. 911. The Supreme Court of Louisiana denied writs without comment. Tr. 1003. The state court decision, though not explained in detail, is nonetheless entitled to deference. "Section 2254(d) applies even where there has been a summary denial." Cullen v. Pinholster, 131 S.Ct. 1388, 1402 (2011).

A petitioner who challenges a state court's summary denial may meet his burden under the first prong of Section 2254(d) only by showing that there was "no reasonable basis" for the state court's decision. The federal habeas court must determine what arguments or theories could have supported the summary decision, and then it must ask

whether it is possible fair-minded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court. <u>Pinholster</u>, 131 S.Ct. at 1402, citing <u>Harrington v. Richter</u>, 131 S.Ct. 770, 786 (2011).

Petitioner makes general assertions that the traffic stop was illegal, that packages receive the protection of the Fourth Amendment, and that the plain view exception to the warrant requirement did not apply. None of those arguments provide any reasonable basis for asserting a Fourth Amendment claim under the relevant facts, nor do they afford grounds for successfully appealing Judge Garrett's ruling. Her decision was fully supported by the facts and law, so appellate counsel did not render ineffective assistance by not making it an issue on appeal. More important, it cannot be said that there was "no reasonable basis" for the state court's rejection of this ineffective assistance claim

**Ineffective Assistance of Trial Counsel**

The remainder of Petitioner's claims are that his trial counsel rendered ineffective assistance when he allowed Judge Walker to preside over the trial, failed to ensure a proper mental evaluation for Alzheimer's disease, and did not successfully exclude all references to statements made by the informant. To prevail on such a claim, Petitioner must establish both that his counsel's performance fell below an objective standard of reasonableness and that, had counsel performed reasonably, there is a reasonable probability that the result in his case would have been different. <u>Strickland v. Washington</u>, 104 S.Ct. 2052, 2064 (1984).

Petitioner presented these claims to the state courts in his post-conviction application, and the claims were denied in the rulings cited above. These claims were adjudicated and

denied on the merits by the state court, so 28 U.S.C. § 2254(d) directs that the question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether the determination was unreasonable, which is a substantially higher threshold. Schriro v. Landrigan, 127 S.Ct. 1933, 1939 ( 2007). The Strickland standard is a general standard, so a state court has even more latitude to reasonably determine that a defendant has not satisfied it. The federal court's review is thus "doubly deferential." Knowles v. Mirzayance,129 S.Ct. 1411, 1420 (2009).

"If this standard is difficult to meet, that is because it was meant to be." Harrington v. Richter, 131 S.Ct. 770, 786 (2011). Section 2254(d) "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings" and reaches only "extreme malfunctions" in the state criminal justice system. Id. Thus, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id.

Petitioner has cited no state or federal law grounds that would have allowed counsel to successfully insist that Judge Walker not be reassigned the case after attorney Cucci withdrew. Arguments could have been made, but there is no certainty they would have prevailed. Furthermore, a Strickland claim requires a showing of prejudice even if the underlying issue does not. Pickney v. Cain, 337 F.3d 542, 545-46 (5th Cir. 2003). There is nothing but speculation that the trial or its result would have been any different had counsel succeeded in requiring that a different judge preside. Petitioner has not pointed to a single adverse ruling from Judge Walker that might support such an argument.

Petitioner faults trial counsel for not insisting on additional mental health evaluation specific to Alzheimer's disease, but neither of the psychiatrists who examined Petitioner found any indication that he was affected by the disease or otherwise lacked competence. Petitioner has not demonstrated that the state court's rejection of this claim was an unreasonable application of Strickland. The same is true with respect to the Confrontation Clause claim. Counsel might have been able to object successfully to some of the characterization of the informant's information, but it was largely admissible and, moreover, harmless in view of the overwhelming evidence that Petitioner possessed the cocaine. Petitioner is not entitled to relief on this final claim.

Accordingly,

**IT IS RECOMMENDED** that Petitioner's petition for writ of habeas corpus be denied.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See <u>Douglass v. U.S.A.A.</u>, 79 F.3d 1415 (5th Cir. 1996) (en banc).

An appeal may not be taken to the court of appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice, circuit judge, or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c); F.R.A.P. 22(b). Rule 11 of the Rules Governing Section 2254 Proceedings for the U.S. District Courts requires the district court to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate may issue only if the applicant has made a substantial showing of the denial of a constitutional right. Section 2253(c)(2). A party may, within fourteen (14) days from the date of this Report and Recommendation, file a memorandum that sets forth arguments on whether a certificate of appealability should issue.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 15th day of May, 2017.

Mark L. Hornsby
U.S. Magistrate Judge